Carolyn **CHARETTE**, Executrix of the Estate of Gary G. Charette, Plaintiff,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 94–492V.

United States Court of Federal Claims.

May 10, 1995.

---

H. Gregory Williams, Springfield, MA, for petitioner.

Michael P. Milmoe, with whom was Frank W. Hunger, Asst. Atty. Gen., Helene M. Goldberg, Director, John Lodge Euler, Deputy Director and Gerard W. Fischer, Asst. Director, Washington, DC, for respondent.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on petitioner's motion for review of Special Master Elizabeth Wright's December 12, 1994 order dismissing petitioner's claim under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988 & Supp. V 1993) (hereinafter the "Vaccine Act" or the "Act"). For the reasons set forth below, this court affirms the special master's order of dismissal.

## FACTS

On August 1, 1994, petitioner filed a petition for compensation under the Vaccine Act for the death of her husband, Gary Charette. Mr. Charette died on August 8, 1992, after allegedly suffering an anaphylactic reaction to a typhoid vaccine received that same day.

The special master dismissed the petition by order filed December 12, 1994, on the grounds that the typhoid vaccine is not covered by the Act. Petitioner filed a motion for review in this court on January 9, 1995, alleging that the plain meaning of the Vaccine Injury Table includes, by description, the typhoid vaccine. Petitioner also alleged that the legislative intent of the statute clearly contemplates recovery for all vaccine-injured persons.

Respondent argued that the plain meaning of the statute is clear and does not authorize recovery for typhoid-related vaccine injuries. Further, respondent maintained that the special master's conclusion was entirely consistent with the legislative history and purpose of the Act, because recovery under the Act was intended only for injuries resulting from vaccinations against well established childhood vaccines, and not for injuries resulting from the typhoid vaccine.

## DISCUSSION

### 1. Standard of Review

■ The standards of review for petitions under the National Vaccine Injury Compensation Program are governed by 42 U.S.C. § 300aa–12(e)(2). This court has the authority under the Act to "set aside any findings of fact or conclusion of law . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). By the plain language of the statute, de novo review, as to legal conclusions or factual findings, is not appropriate. See, e.g., Carlson v. Secretary of Dep't. of Health & Human Servs., 23 Cl.Ct. 788, 790 (1991), aff'd, 968 F.2d 1227 (Fed.Cir.1992). Instead, the standards of review "vary in application as well as degree of deference." Munn v. Secretary of Dep't of Health & Human Servs., 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). The special master's findings of fact will be upheld unless they are arbitrary and capricious, discretionary rulings will be upheld unless they constitute an abuse of discretion, and legal questions will be reviewed under the "not in accordance with the law" standard. Neher v. Secretary of Dep't of Health & Human Servs., 984 F.2d 1195, 1198 (Fed.Cir.1993) (quoting Munn, 970 F.2d at 870 n. 10); see also Staples v. Secretary of Dep't of Health & Human Servs., 30 Fed.Cl. 348, 353 (1994) (citations omitted). A reviewing court may not substitute its own judgment for that of a special master if the special master has considered all relevant factors and has made no clear error of judgment. See Gamalski v. Secretary of Dep't. of Health & Human Servs., 21 Cl.Ct. 450, 451–52 (1990); cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Hyundai Elecs. Indus. Co. v. United States Int'l Trade Comm'n, 899 F.2d 1204, 1209 (Fed.Cir.1990). Accordingly, this court must grant the special master wide latitude when reviewing the propriety of a dismissal of a petitioner's claim. In the instant case, the court must determine whether the special master's conclusion that the typhoid vaccine is not covered by the Vaccine Injury Table, 42 U.S.C. § 300aa–14(a), was not in accordance with the law.

### 2. *Plain Meaning*

■ "[I]n determining the scope of a statute, one is to look first at its language." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). "[L]egislative history cannot prevail over the plain meaning of a statute, if the meaning is indeed plain...." *Staples*, 30 Fed.Cl. at 354 (1994).

The Vaccine Injury Table consists of four parts. Part I covers:

I. DTP; P; DTP/Polio Combination; or Any Other Vaccine Containing Whole Cell Pertussis Bacteria, Extracted or Partial Cell Bacteria, or Specific Pertussis Antigen(s).

42 U.S.C. § 300aa–14.

■ The special master concluded that Part I of the statute lists four types of vaccines, each described in clauses separated by semicolons. The common element in Part I vaccines is the pertussis (whooping cough) vaccine. The first vaccine listed is "DTP"—a mixed vaccine of diphtheria and tetanus toxoids and the pertussis vaccine. 5 J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE V–2 (1995). The second listed vaccine is "P"—the pertussis vaccine, which is prepared from the killed microorganisms that cause whooping cough. *Id.* The third vaccine is "DTP/Polio Combination"—a mixed vaccine containing the DPT vaccine and a vaccine for poliomyelitis. *See id.* and 3 J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE M–222. The special master construed the clause after the last semicolon in Part I of the table as a catchall provision covering all other vaccines containing the whole pertussis bacteria or portions thereof.

In her motion for review, petitioner argued that the special master's construction arbitrarily limited the Vaccine Injury Table by

ignoring or de-emphasizing the word "any" and inserting the qualifier "pertussis" to the clause "Any Other Vaccine Containing ... Extracted or Partial Cell Bacteria." Petitioner alleged that because the typhoid vaccine administered to decedent contained extracted or partial cell bacteria it is necessarily included by description in the table. The court notes that petitioner's argument would abrogate the structure of the statute. The Vaccine Injury Table delineates four categories of vaccines that are covered by the statute. A wide variety of vaccines would be "included by description" under petitioner's theory because they contain whole or partial cell bacteria.[1] In fact, petitioner argued for coverage of "*any* vaccine-injured persons, including adults injured by vaccines other than childhood vaccines." Such an all inclusive interpretation of Part I would defeat the four-part categorization of the Vaccine Injury Table. Congress could not have intended the Act to have such broad coverage.

The court concludes that the special master's interpretation was in accord with the plain meaning of the statute.

### 3. *Legislative Intent*

Although the language in the Vaccine Act is apparently unambiguous, the court can examine legislative history to confirm that the language reflects congressional intent. *See Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed.Cir.1990). In her motion, petitioner argued that the legislative intent of the statute disfavors a limited construction and instead contemplates coverage of any vaccine-injured persons, including adults injured by non-childhood vaccines. Petitioner is misguided.

■ The National Vaccine Program was created, in large part, by Title III of P.L. 99–660. The legislative history of the Act is clear:

---

1. Claims for recovery under the Program for vaccines alleged to be included by description in Part I of the table have been denied for typhoid-paratyphoid inoculation, *see Dover v. Secretary of Dep't of Health & Human Servs.*, No. 90–2299V, 1991 WL 164496, 1991 U.S.Cl.Ct. LEXIS 392 (Aug. 8, 1991), and influenza vaccination, *see Dalton v. Secretary of Dep't of Health & Human Servs.*, No. 90–2785V, 1991 WL 146245, 1991 U.S.Cl.Ct. LEXIS 342 (July 18, 1991). Several vaccines contain extracted or partial cell bacteria including: typhoid, pertussis, BCG (bacillus Calmette–Guerin), Cholera, and Plague. *See generally*, United States Pharmacopeial Convention, *U.S. Pharmacopedia: National Formulary* (1995).

the "National Childhood Vaccine Injury Act of 1986", create[d] a new system for compensating individuals who have been injured by vaccines routinely administered to children. The system consists of two separate, but related parts and concerns only the actions of those injured by specified childhood vaccines and the manufacturers of such vaccines.

H.R.REP. No. 908, 99th Cong., 2d Sess. 1, 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344, 6344. Congress recognized the important public interest in vaccinating children against infectious diseases and the inherent risk that a small percentage of the population may have adverse reactions to the vaccines. State laws often mandate vaccination for school attendance and parents face a dilemma having their children vaccinated despite the inherent dangers. Those injured by the vaccines formerly sought relief from the tort system. As a result the number of vaccine manufacturers declined, and the cost of the vaccines rose. *Id.* at 4. The National Vaccine Injury Compensation Program was created to ensure the availability of childhood vaccines and provide fair and simple compensation to those who are injured by such vaccines. *Id.* at 7.

■ Petitioner cited three provisions in the statute to support her argument that the Act was intended to cover non-childhood vaccines. First, petitioner noted that § 300aa–10(a) established the National Vaccine Injury Compensation Program "under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa–10(a). Because the provision does not qualify the nature of compensable vaccine-related injuries, petitioner argued that the Act contemplates recovery for all vaccine-related injuries. Such broad language found in the statute's more general provisions, however, does not supersede the more specific language limiting recovery to petitions that comply with sections 300aa–11(c) and 300aa–13. Statutory interpretation requires examination of the entire statute; "a statutory subsection may not be considered in a vacuum." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992).

■ Second, petitioner cited a provision indicating that the National Vaccine Act was established "to achieve optimal prevention of human infectious diseases through immunization." 42 U.S.C. § 300aa–1. Again, petitioner argued that because the provision does not qualify the types of diseases covered by the program, recovery must not be limited to childhood vaccines. This argument is also not persuasive. The Vaccine Injury Compensation Program is part of the National Vaccine Program. The National Vaccine Program was not created solely to compensate persons injured by vaccines; in addition to the Vaccine Injury Compensation Program the National Vaccine Program contains "several other provisions not pertaining to the issue of compensation for vaccine-injured persons, but very much linked to the related questions of vaccine development, safety, and effectiveness." H.R.Rep. No. 908, 99th Cong., 2d Sess. at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6344. These "other provisions" include vaccine-related activities such as research and development, testing, licensing, production, procurement, and distribution, that are distinct from the more limited coverage of the Vaccine Injury Compensation Program. *Compare* 42 U.S.C. § 300aa–2 *with* 300aa–10. The fact that the charter of the National Vaccine Program is not expressly limited to the prevention of childhood diseases does not mean that petitioner is eligible for compensation under the Vaccine Injury Compensation Program.

■ Finally, petitioner cited the eligibility requirements of 42 U.S.C. § 300aa–11(c)(B)(i)(II) which include those "serving *abroad as a member of the Armed Forces or otherwise as an employee of the United States.*" Petitioner argued that Armed Services personnel are unlikely to be administered childhood vaccines and therefore the Act contemplates recovery for non-childhood vaccines. Petitioner apparently interprets the phrase "well-established childhood vaccines" as vaccines that are administered solely to children. Clearly this is not the interpretation contemplated by the legislative history. The tetanus vaccine, for example, is a "well-established childhood vaccine" as used in the legislative history because it is administered to prevent tetanus, one of the "seven

common childhood diseases" against which State immunization laws require children to be vaccinated. H.R.Rep. No. 908, 99th Cong., 2d Sess. at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6346. Recovery for qualified, tetanus vaccine-related injuries is contemplated despite the fact that the vaccine is commonly administered to adults as well as children. Although the issue is not before the court, adults suffering from qualified vaccine-related injuries may be eligible for compensation in order to ensure the continued availability of the "childhood" vaccine.

The typhoid vaccine administered to petitioner's husband is not mentioned anywhere in the statute or its legislative history. Rather, the legislative history indicates that Congress contemplated recovery for vaccinations against seven specified diseases: polio, measles, mumps, rubella, diphtheria, pertussis, and tetanus. *Id.; see also* 129 Cong.Rec. 33,794, 33,803 (1983).

■ The financing scheme of the National Vaccine Injury Compensation Program also supports a finding that recovery is limited to specified childhood vaccines. The compensation program is funded through the National Vaccine Injury Compensation Trust Fund. 26 U.S.C. § 9510 (1988). The legislative history indicates that the program is to be funded by covered vaccines. 129 Cong. Rec. 33794, 33,803 (1983). Under the statute contributions to the Fund come from excise taxes imposed on the sale of DPT, DT, MMR, and Polio vaccines, as well as combinations of these vaccines. 26 U.S.C. §§ 4131, 4132 (1988). The incidence of taxation on each vaccine varies to "reflect the currently accepted views regarding the relative reactogenicity of the vaccines." H.R.Rep. No. 908, 99th Cong., 2d Sess. at 34, *reprinted in* 1986 U.S.C.C.A.N. at 6346, 6375. Petitioner's argument that recovery is contemplated for all vaccine-related injuries is clearly inconsistent with the implied symmetry of this financing scheme.

### CONCLUSION

Petitioner's argument that the typhoid vaccine is included in the table by description does not comport with the plain meaning of the statute, the structure of the Vaccine Inju-

ry Table, or its legislative history. Therefore, the court finds that petitioner has failed to demonstrate that the special master's decision was not in accordance with the law. Petitioner's motion for review is denied. The court sustains the special master's December 12, 1994 order, dismissing the petitioner's claim.

**IT IS SO ORDERED.**